1          UNITED STATES JUDICIAL PANEL

2                      ON

3          MULTIDISTRICT LITIGATION

4                   – – –

5       HONORABLE SARAH S. VANCE,  CHAIR

6

7

8   IN RE: JUUL LABS, INC.,          )
    MARKETING, SALES PRACTICES,      )
9   AND PRODUCTS LIABILITY           )   MDL NO. 2913
    LITIGATION
10

11      REPORTER'S TRANSCRIPT OF PROCEEDINGS

12          LOS ANGELES, CALIFORNIA

13        THURSDAY, SEPTEMBER 26, 2019

14   _____

15

16       SABA MC KINLEY, RPR, CSR NO. 9051
         OFFICIAL COURT REPORTER, PRO TEMPORE
17           UNITED STATES COURTHOUSE
             350 WEST 1ST STREET
18             MEZZANINE LEVEL
             DEPARTMENT NO. 1
19      LOS ANGELES, CALIFORNIA 90012
             562-354-0704
20              -O0O-

21

22

23

24

25

1                      **APPEARANCES**

2

3    ON BEHALF OF DEFENDANT,
     JUUL LABS, INC.              AUSTIN V. SCHWING, ESQ.

4    ON BEHALF OF PLAINTIFF,
     BRADLEY COLGATE, ET AL.      ADAM GUTRIDE, ESQ.

5

6    ON BEHALF OF PLAINTIFF,
     ERIN NESSMITH, ET AL.
      CRAIG SHAPIRO, ET AL.       SCOTT P. SCHLESINGER, ESQ.

7

8    ON BEHALF OF PLAINTIFF,
     FRANK DOUGLAS D'AMICO        MEKEL SMITH, ESQ.

9    ON BEHALF OF PLAINTIFF,
     T.K.                         MICHAEL A. LONDON, ESQ.

10

11   ON BEHALF OF PLAINTIFFS,
     SAVANNAH WEST, HALLIE HELMS,
      AND BRIAN BENTLEY           ANDY D. BIRCHFIELD, JR., ESQ.

12

13   ON BEHALF OF PLAINTIFF,
     MARIA BEATRIZ-ALEGRE, ET AL.   ELIZABETH J. CABRAER, ESQ.

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            LOS ANGELES, CALIFORNIA; THURSDAY, SEPTEMBER 26, 2019

 2                               -O0O-

 3            JUDGE VANCE:  NEXT UP, NO. 2913.  JUUL LABS, AUSTIN

 4      SCHWING.

 5            MR. SCHWING:  GOOD MORNING.  MAY IT PLEASE THE PANEL,

 6      AUSTIN SCHWING.  I REPRESENT JUUL LABS.

 7            WE NOW HAVE 55 CASES IN 24 JUDICIAL DISTRICTS.

 8            JUDGE VANCE:  I THINK THE FIRST THING YOU ARE GOING

 9      TO HAVE TO TELL US IS WHETHER IT'S FEASIBLE TO SEPARATE THESE

10      PERSONAL INJURY CLAIMS FROM THE ADDICTION CLAIMS -- FROM THE

11      CLASS CLAIMS.

12            MR. SCHWING:  YES, YOUR HONOR.

13            I KNOW THAT THERE WAS A MINORITY POSITION AS TO

14      PERHAPS HAVING TWO MDL'S.  I'VE SPOKEN TO MR. BIRCHFIELD, WHO

15      IS ADVOCATING THAT POSITION.  HE'S INDICATED THAT HE'S GOING

16      TO WITHDRAW THAT POSITION, AND THAT THERE SHOULD ONLY BE ONE

17      MDL.

18            JUDGE VANCE:  BUT IS THERE NO ONE LEFT ADVOCATING FOR

19      THAT POSITION OR IS IT ONLY MR. BIRCHFIELD?

20            MR. SCHWING:  MY UNDERSTANDING IS MR. BIRCHFIELD WAS

21      REPRESENTING ALL OF THE PARTIES WHO WERE ADVOCATING THAT

22      POSITION, AND HE PLANS TO WITHDRAW THAT POSITION BECAUSE IT

23      WOULD BE MORE ECONOMICAL AND EFFICIENT TO HAVE ONE MDL.

24            JUDGE VANCE:  OKAY.  PROCEED.

25            MR. SCHWING:  THANK YOU.
```

1          WE HAVE A SITUATION HERE WHERE ALL THE PARTIES AGREE

2     THAT MDL CONSOLIDATION IS APPROPRIATE; THEREFORE, THE

3     QUESTIONS ARE, WHERE SHOULD THE MDL BE AND WHAT SHOULD THE

4     STRUCTURE OF THE MDL BE?

5          AS TO THE FIRST QUESTION OF WHERE, AS I INDICATED TO

6     THE CLERK THIS MORNING, I'D LIKE TO UPDATE JUUL LABS' POSITION

7     ON THAT ISSUE.  I'VE ALSO SPOKEN TO ALTRIA AND PHILIP MORRIS

8     USA'S COUNSEL ON THIS ISSUE, AND WE SHARE THE SAME VIEW, WHICH

9     IS WE DON'T HAVE ANY OBJECTION TO EITHER THE NORTHERN DISTRICT

10    OF CALIFORNIA OR TO THE DISTRICT OF NEW JERSEY.

11          AND THERE'S BEEN A SUGGESTION BY SOME OF THE LAWYERS

12    ON THE PLAINTIFFS' SIDE THAT JUDGE MARTINOTTI WOULD BE A

13    CAPABLE JURIST.  HE'S GOT A LOT OF EXPERIENCE WITH RESPECT TO

14    PRODUCT LIABILITY ISSUES.

15          JUDGE ORRICK, IN THE NORTHERN DISTRICT OF CALIFORNIA,

16    IS ALSO A FANTASTIC JURIST.  JUST SAW HIM YESTERDAY ON THE

17    PANEL.  HE'S A WONDERFUL JUDGE.  WE'D BE HAPPY WITH EITHER ONE

18    OF THEM, AND WE WILL TRUST THE PANEL'S JUDGMENT WHEN IT COMES

19    TO THAT ISSUE.  ONE OF THE THINGS THAT I'M NOT ALLOWED TO DO

20    BUT THE PANEL CAN DO IS REACH OUT TO THE JUDGES AND SEE IF

21    THEY HAVE THE AMOUNT OF TIME THAT'S NECESSARY, THE EXPERIENCE,

22    THE INTEREST, AND SO THAT MIGHT BE AN INTERESTING THING TO

23    LEARN HERE.

24          JUDGE VANCE:  WHAT ABOUT THIS MARYLAND CASE UNDER THE

25    ADMINISTRATIVE PROCEDURE ACT?  WHY ISN'T THAT A PROPER VENUE

1     FOR THIS LITIGATION?

2           MR. SCHWING:  THAT'S A GOOD QUESTION, YOUR HONOR.

3           WE DON'T HAVE A SINGLE CASE IN THE DISTRICT OF

4     MARYLAND.  THE CASE THAT WAS BEFORE JUDGE GRIMM, WHICH HAS

5     BEEN ADVOCATED FOR, WAS THE AMERICAN PEDIATRICIANS ASSOCIATION

6     VS. FDA CASE.  NONE OF THE PARTIES IN THIS ACTION WERE

7     INVOLVED THERE.  THERE'S NONE OF THE SAME ALLEGATIONS.  IT

8     DIDN'T INVOLVE CLAIMS WITH RESPECT TO JUUL LABS.  THAT CASE

9     RELATED SOLELY TO THE TIMING OF THE FDA'S PREMARKET

10    AUTHORIZATION PROCESS, WHICH IS ONLY TANGENTIAL TO THE ISSUES

11    THAT WE'RE FACING HERE.

12          THAT CASE HAS ALSO BEEN RESOLVED.  THERE'S REALLY NO

13    REASON TO SEND IT TO THE DISTRICT OF MARYLAND.

14          JUDGE VANCE:  I KNOW I ASKED YOU THIS BUT I'M NOT

15    ENTIRELY CLEAR.  ARE WE GOING TO HEAR ARGUMENT FROM ANYBODY

16    THIS MORNING THAT THE PERSONAL INJURY CASES SHOULD BE

17    SEPARATED?  IS ANYBODY ARGUING FOR THAT?  NOBODY?

18          MR. SCHWING:  I'M TOLD THE ANSWER IS, "NO."  I

19    BELIEVE THAT MS. CABRASER WILL ARGUE THAT THE -- WHICH THEY'VE

20    CALLED THE CATASTROPHIC INJURY CASES SHOULD NOT BE INCLUDED.

21          JUDGE VANCE:  WHY DON'T YOU TALK ABOUT THAT.

22          MR. SCHWING:  ABSOLUTELY.

23          JUDGE VANCE:  SHE'S GOOD ON HER FEET.

24          MR. SCHWING:  I DON'T KNOW IF IT'S BETTER TO GO FIRST

25    OR LAST ON THIS ISSUE BUT I'LL DO MY BEST.

1       THERE'S ONLY ONE PLAINTIFF OUT OF ALL THE PLAINTIFFS

2   WHO HAVE SUBMITTED ANYTHING THAT SUGGESTED THAT THOSE INJURIES

3   SHOULD BE EXCLUDED FROM THE MDL.  MS. CABRASER REPRESENTS ONE

4   PLAINTIFF, PLAINTIFF MS. BEATRIZ-ALEGRE.  MS. BEATRIZ-ALEGRE

5   DOES NOT SUFFER FROM A CATASTROPHIC INJURY.  IT IS A MORE

6   STRAIGHT-FORWARD NICOTINE ADDICTION CASE.

7       THEY'VE RAISED THAT THERE ARE WHAT THEY'VE SAID TWO

8   CASES THAT SHOULD FALL OUT OF THE MDL; THE KRIKORIC [PHONETIC]

9   CASE, WHICH HAS NOT BEEN DISMISSED.  THAT WAS A ALLEGED LUNG

10   COLLAPSE CASE.  THE OTHER ONE IS THE NESSMITH CASE, WHICH --

11   A.O., WHICH IS THE MINOR IN THAT CASE, ALLEGEDLY SUFFERED

12   SEIZURES.  THAT IS A PUTATIVE CLASS ACTION CASE.  IT WOULD

13   MAKE ABSOLUTELY NO SENSE TO SEPARATE A PUTATIVE CLASS ACTION

14   FROM THE MDL.

15       THE PANEL HAS TIME AND AGAIN, WHEN IT'S FACED WITH

16   ISSUES -- CLASS ACTIONS AND ALSO INDIVIDUAL ACTIONS, INCLUDING

17   VERY SERIOUS CLAIMS ABOUT PERSONAL INJURY OR EVEN WRONGFUL

18   DEATH, HAS CREATED ONE MDL.  WE'RE GOING TO HAVE THE SAME

19   ISSUES AGAIN AND AGAIN IN THESE CASES --

20       JUDGE VANCE:  DO THE ADDICTION CASES ALSO ASSERT

21   PERSONAL INJURIES?

22       MR. SCHWING:  SOME OF THEM DO, YOUR HONOR.  THERE'S

23   KIND OF A GRAB BAG.  IT'S INTERESTING.  I WAS LOOKING AT IT

24   LAST NIGHT.  THERE ARE CLASS ACTION CASES WHERE THERE ARE

25   ALLEGED SERIOUS INJURIES, SUCH AS THE NESSMITH CASE.  THERE

1      ARE CASES WHERE THEY ONLY ALLEGE ADDICTION.  THERE ARE ALSO

2      INDIVIDUAL CASES WHERE ALL THEY ALLEGE IS ADDICTION AND SOME

3      WHERE THEY ALLEGE MORE SERIOUS ALLEGATIONS.

4              JUDGE HUVELLE:  PENDING --

5              MR. SCHWING:  WE'RE GOING TO HAVE THE SAME THING

6      AGAIN AND AGAIN IN THIS CASE.  ALL THE CASES RELATE TO JUUL

7      LABS.  THEY ALL RELATE TO THE SAME PRODUCT WITH THE SAME

8      INGREDIENTS.  WE'RE GOING TO HAVE THE SAME WITNESSES.  WE'RE

9      GOING TO HAVE THE SAME --

10             JUDGE VANCE:  LET ME ASK YOU THIS:  THERE'S BEEN A

11     LIST OF INJURIES THAT ARE POTENTIALLY RELATED TO YOUR CLIENT'S

12     PRODUCT THAT RANGE FROM LUNG INJURIES TO, YOU KNOW, MOOD

13     SWINGS AND THAT SORT OF THING.  IS THE DISCOVERY THAT, ON YOUR

14     PRODUCT DEVELOPMENT AND MARKETING, IS IT GOING TO COVER YOUR

15     INQUIRY INTO WHETHER THERE WERE ANY SIDE EFFECTS LIKE THAT, OR

16     IS -- ON THE ADDICTION CASES, OR WILL IT BE SPECIFIC TO AN

17     ADDICTION?

18             MR. SCHWING:  I BELIEVE THE PLAINTIFFS' LAWYERS WHO

19     ARE REPRESENTING -- PURPORTING TO REPRESENT THE CLASSES HERE

20     INTEND TO TAKE DISCOVERY WITH RESPECT TO ALL OF THAT -- THOSE

21     ISSUES, AND IT MADE ALLEGATIONS THAT JUUL LABS PRODUCTS CAUSED

22     ALL OF THOSE POTENTIAL SIDE EFFECTS.  AND WHEN WE PRESENT OUR

23     DEFENSE IN THIS CASE AND DEMONSTRATE THAT THOSE ALLEGATIONS

24     ARE FALSE, WE'RE GOING TO BE DOING THE SAME WITH RESPECT TO

25     THE INDIVIDUAL CASES AND THE CLASS ACTION CASES.  I DO BELIEVE

```
1        THERE'S TREMENDOUS OVERLAP AMONGST ALL THESE CASES.

2                JUDGE VANCE:  THANK YOU.

3                JUDGE HUVELLE:  IS THE MARYLAND CASE A NATIONWIDE

4        CLASS?

5                MR. SCHWING:  IT IS...

6                JUDGE HUVELLE:  THIS IS A TAGALONG, I TAKE IT?

7                MR. SCHWING:  IT IS A TAGALONG.  I BELIEVE THAT IS IN

8        AN INDIVIDUAL CASE, BUT I'M CHECKING.  THERE'S NOW A

9        PROLIFERATION OF THESE THINGS.

10               JUDGE HUVELLE:  THERE MAY BE MORE, I ASSUME.

11               MR. SCHWING:  I, UNFORTUNATELY, AGREE THAT THAT'S

12       PROBABLY TRUE.

13               JUDGE HUVELLE:  I'M SURE WE CAN FIND THE ANSWER.

14               MR. SCHWING:  I APOLOGIZE FOR NOT HAVING THAT AT THE

15       READY.

16               JUDGE VANCE:  THANK YOU.

17               MR. SCHWING:  THANK YOU SO MUCH.

18               JUDGE VANCE:  NEXT UP, MR. GUTRIDE.

19               MR. GUTRIDE:  THANK YOU, YOUR HONOR.

20               ADAM GUTRIDE ON BEHALF OF THE PUTATIVE CLASS

21       PLAINTIFFS IN THE CASE NOW PENDING IN FRONT OF JUDGE ORRICK

22       WHICH WAS FILED 18 MONTHS AGO.

23               AS MR. SCHWING SAID, ALL PARTIES ARE IN AGREEMENT ON

24       CENTRALIZATION.  THESE CASES CANNOT BE SPLIT, AND THAT GOES

25       ALSO FOR THE CATASTROPHIC INJURY CASES WHICH REALLY CANNOT
```

1    REMAIN IN THEIR OWN DISTRICTS OR SOME OTHER DISTRICT BECAUSE

2    THEY NOT ONLY INVOLVE THE SAME FACTS BUT ALSO THE SAME LEGAL

3    CLAIMS FOR RELIEF THAT WILL HAVE TO BE DECIDED.

4            JUDGE PROCTER:  MR. GUTRIDE LOOK DOWN THE PORTAL A

5    TIME FOR ME AND TELL ME WHAT THIS CASE LOOKS LIKE IN ONE TO

6    THREE YEARS, IF WE CENTRALIZE IT.

7            MR. GUTRIDE:  YOUR HONOR, GIVEN THAT JUST YESTERDAY

8    THE NEWS WAS CHANGING, IT'S VERY DIFFICULT FOR ME TO MAKE A

9    PREDICTION THAT FAR IN THE FUTURE, BUT IT DOES LOOK LIKE THERE

10   WILL BE A SERIES OF INDIVIDUALS WHO COME FORWARD WHO CLAIM

11   THAT THEY HAVE OBVIOUSLY BECOME ADDICTED TO THIS PRODUCT AND

12   THAT THEY HAVE SECONDARY EFFECTS FROM THAT ADDICTION; WHETHER

13   THEY ARE MOOD SWINGS, PROBLEMS WITH MEMORY, OR PROBLEMS WITH

14   BREATHING, SEIZURES, STROKES, ALL OF THOSE SORTS OF THINGS ARE

15   LIKELY TO HAPPEN.

16           THOSE ALLEGATIONS HAVE BEEN MADE, THAT THERE WAS A

17   FAILURE TO WARN ABOUT THOSE RISKS.  THAT THERE WAS -- THE

18   PRODUCT IS DEFECTIVE BECAUSE IT IS LIKELY TO CAUSE THOSE

19   RISKS.  THOSE ARE PART OF THE CLASS CASE, AND THEY WILL BE

20   LITIGATED ON THAT BASIS AS WELL AS PART OF THE CLASS CLAIMS.

21           OBVIOUSLY THERE WILL BE AN ISSUE ABOUT WHICH PART CAN

22   BE CERTIFIED AND TO WHAT EXTENT, BUT JUDGE ORRICK IS

23   WELL-PLACED TO TRACK CASES IF NECESSARY.  JUDGE ORRICK HAS

24   BEEN DEEPLY INVOLVED IN THIS CASE.  HE'S DECIDED TWO MOTIONS

25   TO DISMISS.

1        THE DEFENDANT IS OBVIOUSLY BASED IN THE NORTHERN

2   DISTRICT.  HE HAS PREVIOUSLY HAD THE LIDAJERN [PHONETIC]

3   ANTITRUST MDL.  HE DOES NOT CURRENTLY HAVE ANY MDLS, UNLIKE

4   THE OTHER PROPOSED JUDGES.  AND HE WAS -- HE ALSO RECENTLY HAD

5   A CLASS TRIAL AGAINST BAYER.  HE'S VERY EXPERIENCED AND ABLE

6   TO DEAL WITH COMPLEX LITIGATION LIKE THIS.

7        THANK YOU VERY MUCH.

8        JUDGE VANCE:  THANK YOU.

9        NEXT UP IS MR. SCHLESINGER.

10        YOU ARE GOING TO EXPLAIN WHY MARYLAND IS RELEVANT TO

11   THIS LITIGATION.

12        MR. SCHLESINGER:  YES, I AM.

13        MAY IT PLEASE THE COURT, I'M SCOTT SCHLESINGER.  I

14   REPRESENT THE SHAPIRO AND NESSMITH FAMILIES.

15        TO PUT THINGS IN PERSPECTIVE FOR WHAT MR. SCHWING

16   SAID RIGHT OUT OF THE BOX, WITH REGARD TO MARYLAND, THE CASE

17   BEFORE JUDGE GRIMM IS STILL ONGOING.  IT'S ON APPEAL.  HE DID

18   MAKE IMPORTANT DISPOSITIVE RULINGS TO HUSTLE THE FDA ALONG,

19   BUT MR. SCHWING'S CLIENT, JUUL, THE MANUFACTURERS OF THESE

20   PRODUCTS, ATTEMPTED TO INTERVENE IN THAT CASE.  SO THEY DO

21   HAVE INVOLVEMENT IN THE CASE.

22        JUDGE GRIMM'S RULINGS SPOKE SPECIFICALLY ABOUT JUUL,

23   AND THE INDUSTRY IS RECALCITRANT IN MAKING THE PREMARKET

24   APPLICATION THAT ENABLED THIS EPIDEMIC TO TAKE PLACE.

25        JUDGE VANCE:  THE CASE --

```
 1                    I MEAN, IT'S HARD FOR ME TO SEE WHAT ISSUES IN THAT
 2        CASE AND THIS CASE OVERLAP IN TERMS OF FACTUAL DISCOVERY.
 3                    MR. SCHLESINGER:  THIS IS A TOBACCO CASE, RIGHT.
 4        ADDICTION TO NICOTINE IS AN INJURY.  THE TOBACCO ACT SAYS THAT
 5        PEDIATRIC USE OF TOBACCO PRODUCTS, OF WHICH JUUL IS A TOBACCO
 6        PRODUCT, IS A PEDIATRIC DISEASE.  90 PERCENT OCCURS BEFORE THE
 7        AGE OF 18.  THE FDA DID NOT GET AROUND TO DEALING WITH THIS,
 8        AND NOW JUDGE GRIMM IS.
 9                    WHEN IT COMES TO TOBACCO, BIG TOBACCO, THEY ARE NOT
10        LIKE ANYBODY ELSE.  THIS PANEL, MAY IT PLEASE -- WITH ALL DUE
11        RESPECT, SHOULD CONSIDER THE PUBLIC HEALTH IMPLICATIONS OF
12        THIS.
13                    JUUL IS TOBACCO.  THEY ARE NOW RUN BY A FORMER SENIOR
14        EXECUTIVE FROM PHILIP MORRIS, ALTRIA, WHO WE'VE SUED AND WE
15        SOUGHT TO ENJOIN THE SALE OF THE PRODUCT.
16                    RIGHT NOW THERE ARE THINGS --
17                    CONDITIONS ARE CHANGING DAILY.  THE FDA, SINCE THE
18        BRIEFING CLOSED, SAID THAT IT'S AN ADULTERATED PRODUCT AND IT
19        VIOLATES FDA ORDERS.  YOU CAN'T --
20                    JUDGE VANCE:  DIDN'T YOUR CASE INVOLVE WHETHER THE
21        FDA VIOLATED THE ADMINISTRATIVE PROCEDURE ACT BY LETTING THEM
22        MARKET THESE PRODUCTS BEFORE THEIR NEW PRODUCT WAS APPROVED?
23        ISN'T THAT WHAT YOUR CASE WAS ABOUT?
24                    MR. SCHLESINGER:  YOU CAN'T --
25                    WITH ALL DUE RESPECT, JUDGE, YOU CANNOT PULL BIG
```

1      TOBACCO OUT -- A HUNDRED TIMES IN THE MOTION TO DISMISS, THEY

2      REFER TO REGULATION.  THEY REFER TO THE FDA REGULATION.

3      THAT'S WHAT THEY'RE DOING IN SAN FRANCISCO.  THEY USE IT AS A

4      SWORD IN SAN FRANCISCO.  THEY USE IT AS A SHIELD IN MARYLAND.

5      THEY DON'T WHAT TO BE REGULATED.  THEY HAVEN'T APPLIED FOR --

6               JUDGE KAPLAN:  WHAT IS THE COMMONALITY BETWEEN ALL

7      THESE OTHER CASES AND YOUR A.P.A. CASE AGAINST --

8               MR. SCHLESINGER:  WELL, THE CASE IS -- PHILIP MORRIS

9      IS OUT OF VIRGINIA AND NEW YORK.  THE A.P.A. --

10              JUDGE KAPLAN:  [OVERLAPPING SPEAK] IS FROM DETROIT,

11     SO WHAT.

12              MR. SCHLESINGER:  THE REGULATION IS GOING ON, IF IT

13     EVER GOES ON, IN WASHINGTON D.C.  REMEMBER, TOBACCO HAS BEEN

14     DETERMINED AS A FEDERAL JUDGE, UNLIKE --

15              JUDGE KAPLAN:  I GET YOUR WHOLE ARGUMENT EXCEPT

16     "THEREFORE".

17              MR. SCHLESINGER:  THEY'RE TERMED A RACKETEER

18     INFLUENCE CORRUPT ORGANIZATION.  THEY TRY TO STAVE OFF

19     REGULATION.  EVERYTHING HAVING TO DO WITH FDA --

20              JUDGE PROCTER:  COUNSEL, I THINK THIS IS WHAT WE'RE

21     TRYING TO FOCUS ON.

22              MR. SCHLESINGER:  YES, SIR?

23              JUDGE PROCTER:  YOU'RE ARGUING THAT THE GOVERNMENT

24     INVESTIGATION IS A RELEVANT FACTOR FOR OUR CONSIDERATION, BUT

25     THAT'S ONE OF MANY FACTORS WE HAVE TO CONSIDER.  PUT THAT

1       ASIDE.  WE GET YOUR ARGUMENT ON THAT.  WHY DO ANY OTHER

2       FACTORS FAVOR DISTRICT OF MARYLAND?

3               MR. SCHLESINGER:  THIS IS A NATIONAL CASE.  THERE ARE

4       PLAINTIFFS ALL OVER THE COUNTRY.  THERE ARE MILLIONS OF YOUTH

5       AND YOUNGSTERS DEPENDENT ON NICOTINE IN A TOBACCO CASE.

6       THE NEXUS TO SAN FRANCISCO, AND I'M NOT SAYING JUDGE ORRICK

7       WON'T DO A GOOD JOB AND HE ISN'T A VIABLE ALTERNATIVE AS JUDGE

8       MARTINOTTI, IN NEW JERSEY, MAY BE AS WELL.  BUT SO TOO IS

9       JUDGE GRIMM, WHO HAS ALREADY MOVED THE BALL WAY DOWN LOOKING

10      AT INDUSTRY, LOOKING AT JUUL, LOOKING AT THE FAILURE TO COME

11      AND SUBMIT THEMSELVES TO REGULATION.

12              WHEN IT COMES TO TOBACCO --

13              JUDGE KAPLAN:  WHAT IS IT HE HAS DONE?  ON THE

14      QUESTION OF GENERAL CAUSATION WITH RESPECT TO ANY ONE OF THE

15      LAUNDRY LISTS OF POSSIBLE SIDE EFFECTS THAT HAS BEEN TROTTED

16      OUT HERE, AND I DON'T MEAN THAT IN A DEROGATORY SENSE.

17              MR. SCHLESINGER:  PURPOSEFUL AVOIDANCE BY THE

18      INDUSTRY OF COMPLYING WITH THE PREMARKET REQUIREMENT DESPITE

19      THE TREATIES FROM THE FDA THAT IT CAN DO SO AND ESTABLISHES A

20      SHOCKINGLY LOW RATE --

21              JUDGE VANCE:  WITH ALL DUE RESPECT COUNSEL, THAT'S

22      NOT EVEN REMOTELY RESPONSIVE TO WHAT I ASKED YOU.

23              MR. SCHLESINGER:  HE SAID IT'S A CLEAR PUBLIC HEALTH

24      EMERGENCY.  JUUL, IN SAN FRANCISCO, IN THEIR MOTION TO DISMISS

25      CITED REGULATION.

```
 1            JUDGE KAPLAN:  DOES THAT MEAN THAT IT'S LIKELY THAT

 2   THERE ARE GOING TO BE PEOPLE OUT THERE WHO HAVE USED THIS

 3   PRODUCT WHO ARE GOING TO HAVE FRACTURED TIBIAS TOMORROW ON

 4   ACCOUNT OF IT?

 5            MR. SCHLESINGER:  NO, SIR.

 6            JUDGE KAPLAN:  NO, IT DOESN'T, SO WOULD YOU TRY,

 7   PLEASE, TO ANSWER MY QUESTION.

 8            MR. SCHLESINGER:  WHEN IT COMES TO TOBACCO, AND IF

 9   I'M GETTING THERE, WHEN IT COMES TO TOBACCO, YOU CANNOT

10   SEPARATE LITIGATION OUT FROM REGULATION.  THEY'RE INEXTRICABLY

11   INTERTWINED.

12            JUDGE HUVELLE:  WERE THE TOBACCO CASES PUT IN THE

13   FDA'S ORBIT?  THEY CERTAINLY WERE NOT PLACED IN THE MIDDLE OF

14   ATLANTIC STATES BECAUSE OF THE FDA.

15            MR. SCHLESINGER:  PHILIP MORRIS IS A DEFENDANT IN

16   SOME OF THE CASES I FILED ALLEGING RACKETEER, INFLUENCE,

17   CORRUPT ORGANIZATION ACTIVITY WITH JUUL IN PERPETUATING THE

18   ADOLESCENT-NICOTINE EPIDEMIC.

19            JUDGE HUVELLE:  MY POINT IS, THE TOBACCO CASES WERE

20   NOT PLACED WHERE THE FDA WAS INVESTIGATED.  THAT WASN'T -- IT

21   WAS NOT A FACTOR IN PUTTING THE TOBACCO CASES --

22            MR. SCHLESINGER:  BUT JUUL IS TOBACCO.  THE CEO, AS

23   OF YESTERDAY, OF JUUL --

24            JUDGE VANCE:  I THINK THIS HORSE IS DEAD.

25            MR. SCHLESINGER:  PARDON ME?
```

1          JUDGE VANCE:  I THINK THIS HORSE IS DEAD.

2          JUDGE KAPLAN:  AND THE DOG WON'T HUNT.

3          MS. SMITH.

4          MS. SMITH:  HI.  MEKEL SMITH, ON BEHALF -- OF DUGAN

5     LAW FIRM ON BEHALF OF PLAINTIFF, FRANK DOUGLAS D'AMICO.

6          WE ARE HERE, YOUR HONORS, TO AGAIN AGREE THAT

7     CENTRALIZATION OF ALL DUAL ACTIONS IS WARRANTED.

8     AN MDL WOULD BE THE MOST EFFICIENT AND MOST APPROPRIATE COURSE

9     OF ACTION FOR THE PANEL, BECAUSE IT WOULD PROMOTE THE JUST AND

10    EFFICIENT CONDUCT OF THESE ACTINS, PREVENT INCONSISTENT

11    PRETRIAL RULINGS AND DUPLICATE DISCOVERY AND CONSERVE THE

12    RESOURCES OF THE JUDICIARY --

13         JUDGE HUVELLE:  MS. SMITH, WHY THE EASTERN DISTRICT

14    OF LOUISIANA?  HOW MANY CASES ARE PENDING THERE; ONE TAGALONG?

15         MS. SMITH:  WE HAVE FILED A CLASS ACTION THAT IS

16    PENDING IN FRONT OF YOUR HONOR, JUDGE VANCE.  AND IN PRIOR

17    CASES, THIS PANEL HAS IDENTIFIED ADVANTAGES IN TRANSFERRING

18    AND CONSOLIDATING CASES TO A DISTRICT COURT IN WHICH ONE OF

19    THE CONSTITUENT ACTIONS IS PENDING.

20         JUDGE PERRY:  RIGHT.  THAT WOULD APPLY TO PRETTY MUCH

21    EVERYWHERE, SO TELL US WHY EASTERN DISTRICT OF LOUISIANA.

22         MS. SMITH:  SHOULD THIS PANEL DETERMINE THAT

23    TRANSFERRING COORDINATIONS OF THESE PROCEEDINGS IS

24    APPROPRIATE, THE EASTERN DISTRICT OF LOUISIANA BEFORE THE

25    HONORABLE SARAH VANCE IS WHERE WE ARE ASKING FOR THE TRANSFER.

1          JUDGE PROCTER:  SO YOU ARE SAYING WE COULD CELEBRATE

2     HER TODAY BY SENDING HER TO --

3          MS. SMITH:  ABSOLUTELY.

4          JUDGE PROCTER:  I THINK THAT'S YOUR BEST ARGUMENT.

5          JUDGE VANCE:  IF YOU DON'T HAVE A BETTER ARGUMENT

6     THAN THAT, I THINK YOU HAVE TO MOVE ON.

7          JUDGE PERRY:  OTHER THAN WE KNOW THAT JUDGE VANCE IS

8     A GREAT JUDGE, WHAT OTHER FACTORS FAVOR GOING TO EASTERN

9     LOUISIANA?

10         MS. SMITH:  WHILE IT IS TRUE THAT JUUL'S HEADQUARTERS

11    IS IN SAN FRANCISCO, MAKING A NORTHERN DISTRICT OF CALIFORNIA

12    THE MOST CONVENIENT FOR JUUL, THE SAME CANNOT BE SAID FOR ALL

13    PARTIES INVOLVED; INDEED, DEFENDANT ALTRIA IS HEADQUARTERED ON

14    THE OTHER SIDE OF THE COUNTRY IN RICHMOND, VIRGINIA, MAKING

15    NEW JERSEY OR POSSIBLY THE DISTRICT OF MARYLAND MOST

16    CONVENIENT TO ALTRIA; AGAIN, NOT FOR ALL PARTIES CONCERNED.

17         JUDGE HUVELLE:  WE'RE NEVER GOING TO FIND THE PERFECT

18    PLACE FOR ALL PARTIES.

19         MS. SMITH:  WHILE THE EASTERN DISTRICT OF LOUISIANA

20    IS NOT EXACTLY IN THE CENTER OF THE COUNTRY, IT IS THE MOST

21    CENTRALLY LOCATED THAN OTHER DISTRICTS.  IT IS MOST CONVENIENT

22    TO THE EAST COAST PARTIES FROM THE NORTHERN DISTRICT OF

23    CALIFORNIA AND MORE CONVENIENT TO THE WEST COAST PARTIES FROM

24    THE DISTRICTS OF NEW JERSEY, THAT'S BEEN ARGUED.

25         JUDGE VANCE:  I HATE TO CUT YOU OFF WHILE YOU ARE

```
 1        SAYING NICE THINGS ABOUT ME, BUT I THINK WE NEED TO MOVE ON.

 2        WE HAVE YOUR ARGUMENT.

 3                    THANK YOU.

 4                    MS. SMITH:  THANK YOU.

 5                    JUDGE VANCE:  NEXT UP IS MR. LONDON.

 6                    MR. LONDON:  GOOD MORNING, YOUR HONORS.

 7        MICHAEL LONDON.  I REPRESENT A MINOR PLAINTIFF, T. K.

 8                    LET ME FIRST ANSWER A COUPLE OF QUESTIONS FOR JUDGE

 9        VANCE.  WE ABSOLUTELY SUPPORT THIS BEING ONE MDL.

10                    JUDGE PROCTOR, YOUR QUESTION ABOUT LOOKING DOWN THE

11        PORTAL OF WHERE THIS MIGHT BE IN ONE, TWO, THREE, FOUR YEARS.

12        THIS IS BECOMING ONE OF THE MOST COMPLEX MULTIFACETED AND

13        GROWING MASS TORTS POTENTIALLY, LIKELY TODAY, AFTER TODAY,

14        MDL.

15                    WE ARE LOOKING AT MULTIPLE INJURY CLAIMS, ADDICTION,

16        PERSONAL INJURY, CLASS CLAIMS, FRAUDULENT MARKETING, DECEPTIVE

17        CLAIMS.  WE'RE NOW HEARING THAT ATTORNEYS GENERALS AND SOME

18        ENTITIES, THIRD PARTY ENTITIES, ARE INVESTIGATING POTENTIAL

19        CLAIMS.  THIS IS BIG.

20                    WE'RE LOOKING AT DEVELOPING REGULATORY ISSUES.  WE'RE

21        LOOKING AT DEVELOPING LEGISLATIVE ISSUES.  WE'RE LOOKING AT

22        MASSIVE MEDIA --

23                    JUDGE PERRY:  SO WHY NEW JERSEY?

24                    MR. LONDON:  I THINK THE SCALE OF THIS IS MASSIVE.

25        AND TO THAT END, I ALSO WILL ADD THERE ARE OTHER PRODUCTS.
```

1  THIS IS A JUUL MDL RIGHT NOT BEING SOUGHT.  E-CIGARETTES RIGHT

2  NOW ARE BEING LOOKED AT.  WHETHER THERE'S A SEPARATE MDL OR

3  WHETHER THEY JOIN WHATEVER MDL JUDGE GETS THIS, ONE OF THE

4  REASONS IT'S COMPLICATED.

5       WHY NEW JERSEY, YOUR HONOR?  I'M FROM NEW YORK, BUT I

6  THINK ONE OF THE CENTRAL --

7       JUDGE HUVELLE:  THAT'S NOT GOING TO DO IT.

8       MR. LONDON:  IT NEVER HAS.

9       JUDGE PROCTER:  WE VERY MUCH APPRECIATE THE CANDOR.

10      MR. LONDON:  THE KEY QUESTION, WHY NEW JERSEY?  IT

11  HAS TO GO, IN MY VIEW, BECAUSE OF THE COMPLEXITY OF THIS CASE

12  TO AN EXPERIENCED MDL JUDGE, WHEREVER THAT MIGHT BE.

13      I SUBMIT IT SHOULD BE NEW JERSEY.  I SUBMIT JUDGE

14  MARTINOTTI, WHO HAS THE FIRST FILED CASE THERE, CHECKS A LOT

15  OF THESE BOXES.  HE IS UNIQUE IN HIS EXPERIENCE WITH HANDLING

16  MASS TORTS FROM THE STATE BENCH.

17      I WAS LOOKING AT IT, IT'S IN OUR BRIEFS.  HE HAD

18  COMPANION MDLS WITH FEDERAL JUDGES, FROM JUDGE HERNDON, THE

19  LATE JUDGE KATZ, JUDGE SYDELL [PHONETIC] IN NEW YORK, TWO WITH

20  JUDGE FRANK IN MINNESOTA, JUDGE SIPPEL IN MISSOURI --

21      JUDGE VANCE:  WE KNOW HE'S REALLY GREAT.

22      MR. LONDON:  SO I IMPLORE THIS PANEL --

23      JUDGE HUVELLE:  HOW MANY MDLS DOES HE HAVE BEFORE HIM

24  NOW?

25      MR. LONDON:  HE HAS ONE INVOKANA DEAL WHICH SEEMED

1    LIKE IT RESOLVED PRETTY QUICKLY, AND IT'S IN RESOLUTION MODE

2    PROBABLY FOR ABOUT THE LAST YEAR.  SO IN SUM --

3         JUDGE VANCE:  ARE YOU SAYING IT BENEFITS TO THE STEPS

4    JUDGE ORRICK HAS TAKEN TO ORGANIZE THESE CASES AND TO -- I

5    THINK HE'S DECIDED A FEW MOTIONS.

6         MR. LONDON:  I THINK JUDGE ORRICK IS A TERRIFIC

7    ALTERNATIVE.

8         THE MOTION TO DISMISS PHASE AND IT'S BEEN IN THAT

9    PHASE FOR 16, 18 MONTHS, AND AT LEAST ONE AMENDED COMPLAINT

10   AND TWO AMENDED COMPLAINTS.  I DON'T SEE THAT AS A DISPOSITIVE

11   OR MEANINGFUL MOMENT.  TYPICALLY IN THESE CASES, THE MDL

12   JUDGES STAY THE MOTIONS TO DISMISS WITH LEAVE TO REFILE THEM.

13   SO I THINK IT'S CERTAINLY HELPFUL, BUT I THINK THERE'S SUCH

14   A -- HE'S GOING TO HAVE TO START OVER, OR JUDGE MARTINOTTI'S

15   GOING TO HAVE TO START OVER.  I THINK IT'S HELPFUL.  I REALLY

16   DON'T THINK THAT MOVES THE NEEDLE.

17        JUDGE HUVELLE:  IF WE CONSIDER BOTH JUDGES EQUALLY

18   QUALIFIED, THERE IS A STRONG REASON TO PICK ONE OVER THE

19   OTHER, OTHER THAN YOU LIVE IN NEW YORK.

20        MR. LONDON:  THAT CONSIDERATION IS MUCH APPRECIATED.

21        JUDGE HUVELLE:  THAT'S IMPORTANT.

22        MR. LONDON:  I THINK JUUL BEING HERE, I PERSONALLY

23   DON'T THINK IT SHOULD GO TO WHERE THEIR BACKYARD IS, JUST A

24   PERSONAL FEELING.

25        I'M SORRY.  JUDGE VANCE?

```
 1              JUDGE VANCE:  NO.  NEVER MIND.  MOVE ON.

 2              MR. LONDON:  I WILL MOVE ON.  MY TIME IS UP.

 3              JUDGE VANCE, JUDGE KAPLAN, IT'S BEEN AN HONOR TO BE

 4      BEFORE YOU.

 5              JUDGE VANCE:  THANK YOU.

 6              MR. BIRCHFIELD.

 7              MR. BIRCHFIELD:  GOOD MORNING, YOUR HONORS.

 8              ANDY BIRCHFIELD ON BEHALF OF SAVANNAH WEST AND HALLIE

 9      HELMS.

10              I WANT TO START BY ADDRESSING A QUESTION THAT JUDGE

11      PROCTOR POSED, "LOOK DOWN THE PORTAL.  WHERE DO WE SEE?"

12              THIS IS A MASSIVE, A MASSIVE LITIGATION, AND IT IS

13      MASSIVELY COMPLEX.  AND WE ARE ON THE -- WE ARE IN THE EARLY

14      STAGES.  THIS IS AKIN TO LOOKING AT THE OPIOID LITIGATION IN

15      THE VERY EARLY DAYS.

16              JUDGE VANCE:  WHY DID YOU CHANGE YOUR POSITION?

17              MR. BIRCHFIELD:  BECAUSE THE CASE IS GROWING.  IT'S

18      GROWING MORE COMPLEX DAY BY DAY, LITERALLY.

19              JUDGE VANCE:  SO THAT'S AN ARGUMENT TO MAKE?  PUT

20      EVERYTHING IN IT AS OPPOSED TO SEPARATING THINGS OUT?

21              MR. BIRCHFIELD:  I THINK YOU COULD STILL SEPARATE IT

22      OUT, BUT I THINK THAT WHAT THE COMPLEXITY DEMANDS IS THAT WE

23      HAVE AN EXPERIENCED MDL JUDGE, AN EXPERIENCED JUDGE IN

24      PRODUCTS, MASSIVE MASS PRODUCT CASES.  THAT IS THE DIFFERENCE.

25              SO THE WORK THAT JUDGE ORRICK HAS DONE, HE'S A FINE
```

1     JURIST.  IF YOU LOOK AT THE TWO JUDGES AND YOU SAY THEIR

2     QUALIFICATIONS ARE THE SAME, THE DISTINCTION IS -- THE

3     DISTINCTION IS THE EXPERIENCE IN THIS TYPE OF LITIGATION.

4          AND I THINK THE GROWING COMPLEXITY, THE GROWING

5     COMPLEXITY OF THIS CASE DEMANDS THAT WE -- IT SUGGESTS WE

6     NEED -- WE NEED AN EXPERIENCED HAND.  THERE WILL BE -- THERE

7     WILL BE LITIGATION THAT IS ONGOING IN MULTIPLE STATE COURT

8     VENUES, AND WE NEED A JUDGE WHO CAN EFFECTIVELY COORDINATE

9     THAT LITIGATION, AND JUDGE MARTINOTTI HAS DEMONSTRATED THE

10    CAPACITY, THE CAPABILITY OF DOING THAT.

11         JUDGE HUVELLE:  HAS HE GIVEN ANY INDICATION THAT HE

12    WANTS THIS CASE?  IT'S A TAGALONG.  I CAN'T IMAGINE HE'S HAD

13    MUCH OPPORTUNITY TO ADDRESS IT.

14         MR. BIRCHFIELD:  I CAN'T SAY THAT PERSONALLY.  I

15    UNDERSTAND THAT JUDGE MARTINOTTI -- HE IS CLEARING THE

16    INVOKANA MDL.  I UNDERSTAND THAT HE WOULD -- WOULD WELCOME THE

17    OPPORTUNITY FOR AN MDL, BUT I CANNOT SAY THAT WITH CERTAINTY.

18         JUDGE VANCE:  THANK YOU.

19         NEXT UP IS MS. CABRASER.

20         MS. CABRASER:  GOOD MORNING, YOUR HONORS.

21         ELIZABETH CABRASER ON BEHALF OF PLAINTIFF MARIA

22    BEATRIZ-ALEGRE AND HER MINOR CHILD, ONE OF THE MANY ADDICTION

23    INJURY CASES.

24         EVENTS IN THE PAST FEW MINUTES HAVE OVERTAKEN ME.

25    "MY HORSE IS DEAD."  "MY DOG WON'T HUNT" OR VICE VERSA, AND I

1    TAKE REFUGE IN THE INJUNCTION OF FLANNERY O'CONNOR,

2    "EVERYTHING THAT RISES MUST CONVERGE."

3              JUDGE HUVELLE:  THAT WILL BE OUR MOTTO FROM NOW ON.

4              JUDGE PROCTER:  DOES THAT MEAN YOU ARE WITHDRAWING

5    YOUR REQUEST TO HAVE CATASTROPHIC CASES SINGLED OUT?

6              MS. CABRASER:  IT DOES, YOUR HONOR, AND LET ME

7    EXPLAIN WHY.  I THINK IT'S THE QUESTION THAT THIS PANEL HAS

8    ASKED OF ALL OF US, TO TRY AS BEST AS WE CAN TO PREDICT WHAT

9    WILL HAPPEN IN THIS CASE.

10             EVENTS CHANGE DAILY.  THEY CHANGE MINUTE BY MINUTE.

11   I DON'T KNOW THE REALITY OF THIS MOMENT, BECAUSE I'M NOT

12   GOOGLING.  BUT WHAT WE HAVE THOUGHT, AND I SAY THIS PAST

13   TENSE, VERY RECENT PAST TENSE, WAS THAT THE CASES OF ACUTE

14   INJURY, THE LUNG COLLAPSE, SEIZURES, HEART ATTACKS, WERE

15   DIFFERENT FROM BOTH THE ADDICTION INJURY CASES AND THE CLASS

16   CASES, BECAUSE THEY INVOLVED ISSUES OF INDIVIDUAL CAUSATION,

17   UNLIKE THE CLASS CASES WHICH ARE MARKETING CASES AND THE

18   ADDICTION CASES WHICH FOCUS ON DEFENDANT CONDUCT AND THE

19   NATURE OF THE PRODUCT.

20             AND WE WERE CONCERNED ABOUT TWO THINGS; NUMBER ONE,

21   THAT IF THOSE CASES WERE PUT TOGETHER WITH THE REST OF THE

22   CASES, THEY MAY LAG BEHIND OR THAT THEY MIGHT DISTRACT.  IN

23   LIGHT OF THE VOLUME OF CASES, THAT HAS CHANGED.

24             IF I MAY SPEAK FOR 30 SECONDS ON WHERE.  THE JUDGES

25   ARE FABULOUS, EVERY JUDGE THAT'S BEEN MENTIONED.  THERE ARE

1    TWO PRACTICAL CONSIDERATIONS THAT FAVOR THE NORTHERN DISTRICT

2    OF CALIFORNIA, JUUL IS THERE.  THE CASES CAN BE TRIED THERE,

3    AND THERE IS A JUDICIAL COUNSEL COORDINATION PROCEEDING WHICH

4    WILL BE HEARD ON OCTOBER 3RD TO COORDINATE ALL OF THE

5    CALIFORNIA CASES.

6            MOST ARE URGING THE NORTHERN DISTRICT OF CALIFORNIA,

7    ALAMEDA COUNTY OR SAN FRANCISCO COUNTY.

8            JUDGE VANCE:  YOU ARE TALKING ABOUT STATE COURT

9    CASES?

10           MS. CABRASER:  STATE COURT CASES.  AN OPPORTUNITY FOR

11   FEDERAL/STATE COORDINATION, AND THAT IS WHERE THESE INDIVIDUAL

12   INJURY CASES PREDOMINANTLY ARE, SO THAT WOULD SOLVE THE

13   PROBLEM.

14           THANK YOU, YOUR HONOR, AND THANK YOU VERY MUCH TO YOU

15   AND TO JUDGE KAPLAN FOR YOUR SERVICE.

16

17

18

19

20

21

22

23

24

25

```
1                    UNITED STATES JUDICIAL PANEL
                                ON
2                    MULTIDISTRICT LITIGATION
                             - - -
3                 HONORABLE SARAH S. VANCE, CHAIR

4     IN RE: JUUL LABS, INC.,        )
      MARKETING, SALES               )
5     PRACTICES, AND PRODUCTS        )
      LIABILITY LITIGATION           )    COURT REPORTER'S
6                                    )    CERTIFICATE

7     I, SABA MC KINLEY, OFFICIAL COURT REPORTER, PRO TEMPORE, IN

8     AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

9     DISTRICT OF CALIFORNIA, FOR THE COUNTY OF LOS ANGELES, DO

10    HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED

11    STATES CODE, THAT THE FOREGOING PAGES 1 - 23, INCLUSIVE,

12    COMPRISE TO THE BEST OF MY ABILITIES, A FULL, TRUE AND CORRECT

13    TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD

14    IN THE ABOVE-ENTITLED MATTER ON, THURSDAY, SEPTEMBER 26, AND

15    THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

16    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

17    DATE: 5TH DAY OF OCTOBER, 2019

18                        /F/ SABA MCKINLEY

19

20              SABA MC KINLEY, RPR, CSR NO. 9051
                OFFICIAL COURT REPORTER, PRO TEMPORE
21

22

23

24

25
```